Filed 4/28/14  P. v. Fowler CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

|  |  |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>CURTISHA SHANAY FOWLER,<br><br>        Defendant and Appellant. | E058364<br><br>(Super.Ct.No. RIF1200809)<br><br>OPINION |

APPEAL from the Superior Court of Riverside County. Larrie R. Brainard, Judge. (Retired judge of the San Diego Super. Ct., assigned by the Chief Justice pursuant to art VI, § 6 of the Cal. Const.)  Affirmed.

Christopher Blake, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland and Marissa Bejarano, Deputy Attorneys General, for Plaintiff and Respondent.

1

Defendant Curtisha Fowler appeals from the trial court's order authorizing her to be treated involuntarily with antipsychotic medications under Penal Code Section 1370. Although defendant argues the order fails to meet each of the four factors set forth in *Sell v. United States* (2003) 539 U.S. 166 (*Sell*), the trial court was clearly not required to base its order on these factors. Given that this is defendant's sole basis for challenging the order, we affirm.

## FACTS AND PROCEDURE

*First Declaration of Mental Incompetency and Involuntary Medication Order*

On January 5, 2012, the People filed a felony complaint charging defendant with mayhem (Pen. Code, § 203) and assault by means likely to cause great bodily injury (§ 245).[1] Regarding the assault charge, the People alleged defendant personally inflicted great bodily injury (§ 12022.7, subd. (a) and 1192.7, subd. (c)(8)). These charges also led to a probation violation petition. The mayhem and assault charges stem from a confrontation with defendant's cell mate in which defendant bit off part of her cell mate's finger.

Also on that date, the trial court declared doubt as to defendant's mental competence, suspended criminal proceedings and appointed two doctors to examine her.

On February 14, 2012, the trial court found defendant mentally incompetent to stand trial. On March 7, 2012, the court committed defendant to Patton State Hospital (Patton) for a maximum of three years.

---

[1] All section references are to the Penal Code unless otherwise indicated.

On June 14, 2012, Patton filed a petition to authorize the administration of involuntary medication pursuant to section 1370, subd. (a)(2)(C).

On November 2012, the hospital filed a certificate of mental competence. On December 7, 2012, the court found defendant's mental competence had been restored and reinstated criminal proceedings.

*Second Declaration of Incompetency and Involuntary Medication Order*

On December 11, 2012, four days after the court declared defendant restored to mental competence, defense counsel orally moved under section 1368 to question defendant's mental competence. The court declared doubt as to defendant's mental competence, suspended criminal proceedings and appointed a doctor to examine her.

On January 16, 2013, after reviewing the doctor's report, the court again declared defendant incompetent. The court appointed Dr. Harvey Oshrin to examine defendant regarding whether she should be involuntarily medicated. The court also ordered a placement evaluation from County Mental Health. On February 11, 2013, a placement evaluation was filed recommending defendant be placed at Patton. The record does not contain a copy of Dr. Oshrin's report regarding whether defendant should be involuntarily medicated.

On March 7, 2013, the court held its hearing under section 1370 to determine whether to order involuntary administration of antipsychotic medicine to defendant. On that date, defense counsel filed a memorandum opposing such an order, citing a lack of sufficient information in Dr. Oshrin's report. The People's sole witness was Dr. Oshrin. He testified that defendant was a danger to others. Dr. Oshrin also opined that the

3

involuntary administration of antipsychotic medicine was substantially likely to render the defendant competent to stand trial and would be in her best medical interest. The defense did not offer any contrary testimony, but vigorously cross-examined Dr. Oshrin as to the basis for his opinions. At the conclusion of Dr. Oshrin's testimony, the People argued that the primary ground for ordering involuntary medication was that defendant was a danger to others. The People's secondary ground was that the involuntary medication would render defendant competent to stand trial and would be in her best medical interest. Defense counsel argued that defendant was willing to voluntarily take antipsychotic medications and so no order was necessary. Secondarily, the defense argued that: 1) Dr. Oshrin's testimony did not establish that he knew enough about her medical history to opine whether taking the proposed medication was in her best medical interest; and 2) Dr. Oshrin was not specific enough about what the treatment plan and specific medicine would be. At the conclusion of the hearing, the court declared that defendant was a danger to others if not medicated. The court added that, even if defendant were not a danger to others, the People had established the alternative ground that the antipsychotic medication was likely to render defendant competent to stand trial. The court ordered Patton to involuntarily administer antipsychotic medication to defendant.

On March 8, 2013, the court committed defendant to Patton for a maximum of three years.

This appeal followed.

4

*The Issues*

Defendant argues the trial court's order that she be involuntarily medicated is invalid under the factors set forth in *Sell*.[2] Although, as defendant correctly points out, "the *Sell* factors generally govern the involuntary administration of psychotropic medications when the sole or primary purpose is to render the patient competent to stand trial," she also claims, without resort to any legal authority whatsoever, that these factors "cannot be ignored in situations where other reasons might exists as, for example, the patient is a danger to other or to himself."

The People counter that the trial court had no duty to consider the *Sell* factors because it based its order on the theory that defendant is a danger to others when she is not medicated, rather on the theory that the involuntary medication would render her competent to stand trial.

*Statutory and Case Law Background*

"A defendant found mentally incompetent to stand trial must be committed to a state hospital for the care and treatment of the mentally disordered, to another treatment facility, or placed on outpatient status. [Citation.] [¶] The treatment the hospital can administer is not without constitutional limits. An individual has a constitutionally

---

[2] Briefly, these factors are: 1) the importance of the government interest at stake; 2) whether the order sought will significantly further the government interest; 3) whether the order is necessary to further the government interest; and 4) whether the drugs are medically appropriate and in the patient's best medical interest. (*People v. Christiana* (2012) 190 Cal.App.4th 1040, 1049.)

protected liberty interest in avoiding the unwanted administration of antipsychotic medication under the due process clause of the Fourteenth Amendment. [Citations.]" (*People v. O'Dell* (2005) 126 Cal.App.4th 562, 568.)

Section 1370, subdivision (a)(2)(B)(i), provides three grounds upon which a court may base an order to involuntarily treat a mentally incompetent defendant with antipsychotic drugs: 1) serious harm to the defendant's mental or physical health will result if his mental disorder is not treated with antipsychotic medication (subd. (a)(2)(B)(i)(I)); 2) the defendant is a danger to others (subd. (a)(2)(B)(i)(II); and 3) the antipsychotic medication is likely to render the defendant competent to stand trial, under specified circumstances (subd. (a)(2)(B)(i)(III).

However, the statute is very specific that the court may not use the "competent to stand trial" ground to involuntarily medicate the defendant unless it has first found that the defendant does not meet the criteria for the first two grounds. "The court shall not order involuntary administration of psychotropic medication under subclause (III) of clause (i) unless the court has first found that the defendant does not meet the criteria for involuntary administration of psychotropic medication under subclause (I) of clause (i) and does not meet the criteria under subclause (II) of clause (i)." (§ 1370, subd. (a)(2)(B)(ii).)

Here, the trial court based its order on defendant's dangerousness to others, and so under subdivision (a)(2)(B)(ii), its decision cannot, by law, be based on the likelihood that defendant can be involuntarily medicated into competency to stand trial. For this reason alone, the *Sell* factors relied upon by defendant in this appeal are irrelevant.

6

If that were not enough, case law is very clear that the *Sell* factors do not apply to an involuntary medication order based on a defendant's dangerousness to others under subdivision (a)(2)(B)(i)(II):  "In *Sell*, the Supreme Court held that the government could involuntarily medicate a mentally ill criminal defendant in order to render him competent to stand trial only if four factors are present: (1) '*important* governmental interests are at stake'; (2) involuntary medication will '*significantly further*' the concomitant state interests of timely prosecution and a fair trial; (3) 'involuntary medication is *necessary* to further those interests'; and, (4) 'administration of the drugs is *medically appropriate* . . . ' [Citation.] [¶] These factors do not apply when the antipsychotic medication is proposed for a different purpose, i.e., related to a defendant's dangerousness . . . . [Citation.]" (*People v. O'Dell, supra,* 126 Cal.App.4th 562, 569.)

*Conclusion*

Here, the trial court's decision to order that defendant be involuntarily treated with antipsychotic drugs was based on her dangerousness to others, thus precluding the necessity to justify the order using the *Sell* factors set forth above.  Because defendant does not challenge the order on the basis of insufficient evidence to support the finding that she poses a danger to others, we must affirm the court's order.

**DISPOSITION**

The trial court's order of March 7, 2013, that defendant be involuntarily treated with antipsychotic drugs is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

7

RAMIREZ
P. J.

We concur:

McKINSTER
J.

KING
J.